UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOSHUA D. BRODSKY, | ) | 3:14-cv-00641-RCJ-WGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | **OF U.S. MAGISTRATE JUDGE** |
| | ) | |
| WARDEN BACA, et al., | ) | **Re:  Doc. # 57** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the court is Plaintiff's Emergency Injunction for Safety. (Doc. # 57.[1])  The court had earlier granted Plaintiff's "Emerency (sic) Hearing for Emergency Injunction" (Doc. # 56) and scheduled a hearing on Plaintiff's motion for July 27, 2015. (Doc. # 63.)  Defendants thereafter filed a response to Plaintiff's emergency injunction.  Doc. # 69.)  The 'Defendants also filed a motion for leave to file certain documents under seal in support of Defendants' opposition to Plaintiff's motion (Docs. ## 70, 71.)[2]  The court proceeded with a hearing on Plaintiff's emergency injunction for safety on July 27, 2015. (Doc. # 75.)  For the reasons set forth in this Report, the undersigned recommends denial of Plaintiff's Emergency Motion for Safety.  (Doc. # 57.)

---

[1]  Refers to court's docket number.

[2] Defendants' filings (Docs. ## 70, 71) were erroneously captioned as being in support of Defendants' "Motion to Dismiss/Motion for Summary Judgment."  Instead, they were intended to pertain to Plaintiff's motion for injunctive relief. At this court's July 27, 2015 hearing on Plaintiff's motion, Plaintiff expressed no opposition to Defendants' filings. Because the materials Defendants submitted contained confidential medical records, the court granted Defendants' motion for leave to file confidential documents under seal. (Doc. # 75 at 3.)

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Complaint, Doc. # 9.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). The only defendants against whom the action was allowed to proceed on a claim of excessive force are D. Ahja, Paul Samsel and Michael Cruise. (Screening Order, Doc # 9.) The Office of the Attorney General subsequently accepted service for Defendants Ahja and Samsel but did not accept service on behalf of defendant Michael Cruise who is no longer an employee of NDOC. (Doc. # 65.) Defendants filed the last known address of Defendant Cruise under seal (Doc. # 66).[3]

The only claim which was allowed to proceed after screening was Count I of Plaintiff's Complaint. District Judge Robert C. Jones addressed this cause of action as follows:

**A. Count I**

In Count I, Plaintiff alleges the following: On November 22, 2014, at 8:00 p.m., Howard escorted Plaintiff to Unit 8A for a "mandown" evaluation. (ECF No. 1-1 at 5). Nurse Katie stated that Plaintiff was fine to return to his cell. (*Id*.). Samsel said, "you can talk now" because Plaintiff was in full restraints. (*Id*.). Samsel told Plaintiff to stand up because he could not hit a man in a wheelchair. (*Id*.). Plaintiff stood up and Samsel took a full air swing at Plaintiff but missed. (*Id*.). Samsel then took a light swing and made contact with the left side of Plaintiff's face almost knocking Plaintiff to the ground. (*Id*.). Samsel also made contact with Plaintiff's stomach causing Plaintiff to cough up blood that night. (*Id*.). On the way out of Unit 8C, Samsel told Plaintiff that he had a "sweet looking ass." (*Id*.).

On November 24, 2014, Plaintiff was in a holding cell when Cruise told Ahja to block the camera. (*Id*.). Cruise picked Plaintiff up out of his wheelchair by the neck and then tossed Plaintiff back down in the wheelchair leaving Plaintiff winded. (*Id*.). This occurred three times. (*Id*.). Cruise told Plaintiff that whatever had happened on Saturday would not happen again because Plaintiff would not need a man down, he would need a black bag. (*Id*.). Plaintiff alleges assault. (*Id*.).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably

---

[3] Plaintiff has not yet filed a motion requesting the U.S. Marshal attempt to serve Defendant Cruise. Plaintiff was advised at the hearing of his obligation to do so under the court's Order (Doc. # 46) granting him IFP status (Doc. # 75 at 2).

2

> perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.  Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.
>
> The Court finds that Plaintiff states a colorable claim for excessive force. Based on the allegations, Plaintiff was in a wheelchair when Samsel and Cruise assaulted Plaintiff. Additionally, Ahja aided Cruise in the assault by blocking the camera. The assaults appear to have been conducted maliciously and sadistically for the purpose of causing harm. This claim shall proceed against Defendants Samsel, Cruise, and Ahja.

Screening Order, Doc. # 8 at 3-4.

The allegations Plaintiff asserted against Warden Baca, NDOC Director Cox, Associate Warden Schreckengost, Associate Warden Walsh, Senior Correctional Officer Miller, Sergeant Branham and Senior Correctional Officer Howard did not proceed beyond screening. (*Id*.)

In Plaintiff's 2-page Emergency Injunction for Safety, he makes vague reference to "(2) two violent attacks" which he claims were inflicted upon him  (or alternatively, "threatened") "by C/O and LT" (names not provided). (Doc. # 57 at 1.)  Plaintiff further asserts he was "attacked for the third (3rd) on 15 June 2015 at Approx. 1515 - 1525 in Unit 5(B) wing by S/E Officer Arridgner."[4] Plaintiff claims to have sustained a "Dis-located left shoulder." (*Id*.)[5]

Defendants respond by noting "there are no concrete facts for either defense counsel or this court to investigate as to this allegation" found in Plaintiff's emergency injunction for safety. (Doc. # 69 at 1.) Defendants dispute the background of the "violent attacks," arguing Plaintiff was not attacked by any NDOC employees, but rather was handcuffed by other NDOC officers (not the defendants herein) after becoming argumentative with an NDOC nurse.  Plaintiff was examined for complaints of shoulder pain and was diagnosed with  calcific tendinitis, not a shoulder dislocation. (*Id*., at 2.) Defendants submitted extracts of Plaintiff's NDOC medical records, which the court authorized to be filed under seal. (Doc. # 75 at 3.)

The court conducted a hearing on Plaintiff's complaints of possible threats or retribution on

---

[4] S/E Officer Arridgner is neither a party against whom this action was allowed to proceed nor was he even included among the litany of defendants Plaintiff initially named in his complaint.

[5] The alleged assault referred to in Plaintiff's complaint and screening order occurred several months earlier, i.e., November 22 and 24, 2014. (Doc. # 8 at 3-4.)

3

July 27, 2015. None of the allegations of threats of violence were attributed by Plaintiff to any of the defendants against whom this action was allowed to proceed.[6] Plaintiff's motion seeks relief from the court to include, *inter alia*, that the U.S. Marshal remove Plaintiff from the custody of NDOC; that the court transfer Plaintiff to another state (Illinois, Plaintiff requested, where he stated he had been twice before confined as an inmate); order the Governor of the State of Nevada to release and/or pardon Plaintiff; or grant Plaintiff immediate parole. (Doc. # 57 at 2; Doc. # 75 at 3.)

At the conclusion of the hearing, the court advised the parties it would be entering a Report and Recommendation recommending denial of Plaintiff's emergency injunction.

## II. DISCUSSION

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). Accordingly, Plaintiff's emergency injunction requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

In addition, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy further requirements when seeking preliminary injunctive relief against prison officials. The

---

[6] At the court's hearing on Plaintiff's motion, Plaintiff Brodsky reported that after he filed his emergency injunction, he was physically attacked by another inmate at NNCC and as a result suffered what he described as being life-threatening injuries. Plaintiff alleged the attack was instigated by certain unnamed or unknown NDOC employees, but he did not identify any of the defendants named in this action (or for that matter, any specific NDOC employee) as being an instigator. Deputy Attorney General Barraclough represented she would be contacting Plaintiff to ascertain whether he would want to have protective custody status, a proposal which Plaintiff initially rejected because protective custody would supposedly preclude video surveillance of his activities.

1  PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

Plaintiff's Emergency Injunction for Safety only addressed the component that absent any injunction, Plaintiff may suffer irreparable harm.[7] However, his motion ignored whether Plaintiff is likely to succeed on the merits, the balancing of hardships or how an injunction would be in the public interest. Moreover, from what the court can discern, it appears Plaintiff is complaining in his motion about events and circumstances and individuals unrelated to the claims proceeding in this action. None of the defendants against whom this action was allowed to proceed, nor even any of the many persons Plaintiff listed in his complaint, were even mentioned in Plaintiff's request for injunctive relief. A claim for injunctive relief must relate to the subject matter of this action. *See, e.g., Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

///
///
///
///
///

---

[7] In this regard, Plaintiff states "the courts can continue to ignore the threats against the Plaintiff or children fight for a silent cold stiff man... ." (Doc. # 57 at 2.)

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Emergency Injunction for Safety (Doc. # 57).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: July 29, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE