UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| JOSHUA D. BRODSKY, | Case No. 3:14-cv-00641-RCJ-WGC |
|---|---|
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| WARDEN BACA, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment per FRCP 56. (ECF No. 117.)[1] Plaintiff filed a response (ECF Nos. 149, 150), and Defendants filed a reply (ECF No. 168).

After a thorough review, the court recommends that Defendants' motion be granted insofar as it argues that Plaintiff failed to exhaust his administrative remedies, and that the action be dismissed without prejudice.

## I. BACKGROUND

At all relevant times, Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., EFC No. 9.) He is a pro se litigant and brings this action

---

[1] Refers to court's electronic case filing (ECF) number.  Defendants originally filed a Motion to Dismiss per FRCP 12(b)(6) and Motion for Summary Judgment per FRCP 56. (ECF Nos. 107.) Defendants were instructed that pursuant to Special Order 109, they must file a separate document for each type of motion. (*See* ECF Nos. 116, 124 at 6.) The court also advised Defendants that pursuant to the Ninth Circuit decision in *Albino v. Baca*, 747 F.3d 1162 (2014), the affirmative defense of failure to exhaust administrative remedies must be raised in a motion for summary judgment, unless the defense is clear from the face of the complaint;  therefore, the court would construe Defendants' motion as one for summary judgment. (ECF No. 124 at 6.) In light of this, Defendants withdrew their motion to dismiss. (*Id*.) The motion for summary judgment appears as ECF No. 117. The exhibits supporting Defendants motion did not appear properly in connection with ECF No. 117; therefore, the court will utilize the exhibits filed in connection with ECF No. 107 (which are the same as those supporting ECF No. 117) when analyzing the motion. (*See id*. at 6-7.)

1    pursuant to 42 U.S.C. § 1983. (*Id.*) The events giving rise to this action took place while Plaintiff
2    was housed in Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Paul Samsel,
3    Michael Cruse and D Aja.[2]

4    Plaintiff was allowed to proceed with claims for excessive force in violation of the Eighth
5    Amendment against the Defendants in Count I. (Screening Order, ECF No. 8.)

6    In Count I, Plaintiff alleges that on November 22, 2014, at 8:00 p.m., Howard escorted
7    Plaintiff to Unit 7A for a "man down" evaluation. (*Id.* at 5.) Nurse Katie stated Plaintiff was fine
8    to return to his cell. (*Id.*) Samsel said, "you can talk now" because Plaintiff was in full restraints.
9    (*Id.*) Samsel told Plaintiff to stand up because he could not hit a man in a wheelchair. (*Id.*)
10   Plaintiff stood up and Samsel took a full air swing at Plaintiff but missed. (*Id.*) Samsel then took
11   a light swing and made contact with the left side of Plaintiff's face, almost knocking him to the
12   ground. (*Id.*) Samsel also made contact with Plaintiff's stomach, causing him to cough up blood
13   that night. (*Id.*) On the way out of the unit, Samsel told Plaintiff he had a "sweet looking ass."
14   (*Id.*)

15   In addition, Plaintiff alleges that on November 24, 2014, he was in a holding cell when
16   Cruse told Aja to block the camera. (*Id.*) Cruise picked Plaintiff up out of his wheelchair by the
17   neck and tossed him back down in the wheelchair leaving Plaintiff winded, three times. (*Id.*)
18   Cruise told Plaintiff that whatever had happened on Saturday would not happen again because
19   Plaintiff would not need a "man down," he would need a black bag. (*Id.*)

20   Defendants move for summary judgment arguing: (1) that Plaintiff failed to exhaust his
21   administrative remedies; and (2) that he cannot establish the elements of an excessive force
22   claim. (ECF No. 117.)

23   **II. LEGAL STANDARD**

24   The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought
25   with respect to prison conditions under section 1983 of this title, or any other Federal law, by a
26   prisoner confined in any jail, prison, or other correctional facility until such administrative
27   remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

28
---
[2] Identified by Plaintiff in the complaint as Ahja.

administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof, however, remains with the defendant. *Id*.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the

1  agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."
2  *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).
3  Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison
4  grievance process but also to adhere to the 'critical procedural rules' of that process. *Reyes v.*
5  *Smith*, --- F.3d ---, 2016 WL 142601, at * 2 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S.
6  81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of
7  proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate
8  exhausts available administrative remedies "under the PLRA despite failing to comply with a
9  procedural rule if prison officials ignore the procedural problem and render a decision on the
10  merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, ---
11  F.3d ---, 2016 WL 142601, at * 3 (9th Cir. 2016).

12       The requirement to exhaust administrative remedies may "be excused under certain
13  limited circumstances where the intervening actions or conduct by prison officials render the
14  inmate grievance procedure unavailable." *McBride v. Lopez*, 807 F.3d 982, 984 (9th Cir. Nov.
15  24, 2015).

16       If the court concludes that administrative remedies have not been properly exhausted, the
17  unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120, *overruled*
18  *on other grounds by Albino*, 747 F.3d 1162.

19       "If the district judge holds that the prisoner has exhausted available administrative
20  remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust
21  available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at
22  1171.

23  **III. DISCUSSION**
24  **A. EXHAUSTION**
25      **1. Summary of Argument**
26       Defendants argue that Plaintiff failed to properly exhaust his administrative remedies.
27  They assert that only one grievance filed by Plaintiff, grievance 20062990574, addresses the
28  events of November 22 and 24, 2014. (ECF No. 17 at 5; Ex. A, ECF No. 107-1 at 4, Ex. B, ECF

1  No. 107-2; Ex. C, ECF No. 107-3.) While Plaintiff submitted an informal level grievance, he
2  never submitted the first and second level grievances, and requested that the grievance be
3  withdrawn. (*Id.*) Defendants also note that grievances 20062989676 (Ex. A at 17), 20062990139
4  (Ex. A at 15), 20062990475 (Ex. A at 14), 20062990575 (Ex. A at 13) and 20062990796 (Ex. A
5  at 13) could also possibly reference these events, but they point out that these grievances were
6  also withdrawn. (ECF No. 117 at 5 n. 4; Ex. D, ECF No. 107-4 at 5.)

   Plaintiff acknowledges that his grievances were withdrawn, but argues that was only after Lisa Walsh informed Plaintiff that if he did not he would go back to Unit 7(b) administrative-segregation. (ECF No. 149 at 5; citing his Ex. C.) He later says that Walsh ordered him to withdraw the grievance as a condition of leaving the MHU (mental health unit) and going back to the yard. (ECF No. 149 at 7; citing Ex. C.) He contends that exhaustion is not required when administrative remedies are rendered unavailable. (ECF No. 149 at 7.)

   Plaintiff relies on his Exhibit C to support his argument that administrative remedies were unavailable to him. This exhibit appears at ECF No. 149-1 at 25 and ECF No. 107-4 at 5. The exhibit is a Case Note Printout Report. The entry for January 23, 2015 states the following:

> NNCC The following grievances were returned to I/M Brodsky. He stated he wanted to dismiss all of them and personally noted that statement on the grievances. All documents were returned to AA Clark to clear them in NOTIS. Grievance # as follow: 2006-29-87728, 87601, 87567, 89767, 90840, 90912, 90574, 90473, 90474, 87857, 87858, 87859, 87725, 87731, 87558, 87566, 90139, 90838, 98523, 91475, 85679, 90575, 98187, 86023, 87726, 90839, 87215, 8524290837, 87856, 87726.

(ECF No. 149-1 at 25.) The entry for January 29, 2015, states the following:

> NNCC/MHU.... Brodsky was seen by the interdisciplinary cmte on 1/22/15 for discharge from the MHU and admit to the SCU. Brodsky has been a management problem in the past in most GP units. He has been participating in programming and treatment with MH staff. Per MH staff he needs structure and is reacting positively to treatment. It is the recommendation of the treatment team to allow I/m Brodsky to continue with treatment in the SCU. AW Walsh agreed with the recommendation and told I/m Brodsky that one of the conditions for his approval into the SCU would be to drop all of the frivolous grievances he has submitted. He was also instructed that in order for him to solve his problems he has to learn to communicate with staff and attempt to resolve his issues without using the grievance process. that should be reserved for serious issues. I/m Brodsky admitted that he gets frustrated and his outlet is to write, and he also stated he is understanding how to communicate with staff. I/m Brodsky admitted thank the

- 5 -

>cmte for all the assistance he has been receiving and agreed to work in a positive way to solve his issues. Cmte agreed to clr him for SCU.
>Cmte: Walsh, Woods, Loftis, Wilson, Ownsby, Hundall, Irvin.

(ECF No. 149-1 at 25.)

According to Defendants, Plaintiff met with Walsh and members of the committee on January 22, 2015, regarding their consideration of his release from the MHU. (ECF No. 168 at 3; Ex. D at 5, 1/29/15 case note.) Plaintiff was told he could step down in treatment if he withdrew the many frivolous grievances premised on his inability to communicate with staff. (*Id*.) He admitted he filed grievances out of frustration. (*Id*.) They argue that the withdrawal of grievances was not forced, but was a choice Plaintiff had to make demonstrating his mental health treatment and communication with staff could improve. (*Id*.) They assert that he was not threatened with administrative segregation, but given the benefit of less restrictive mental health treatment. (*Id*.)

**b. Analysis**

Within the NDOC, Administrative Regulation (AR) 740 governs the inmate grievance procedure. (ECF No. 107-8.) For an inmate to exhaust his administrative remedies, AR 740 requires: (1) an effort at resolving the issue informally through discussion with a caseworker; (2) filing an informal level grievance;  (2) filing a first level grievance; and (3) filing a second level grievance. (ECF No. 43-1 at 5-10.)

Plaintiff's grievance number 20062990574 vaguely references the events of November 22, 2014 and November 24, 2014 at the informal level. (ECF No. 107-1 at 14; ECF No. 107-3.) The grievance's main focus though, seems to be on explaining his response to the charges brought against him subsequent those incidents. (*Id*.) Plaintiff was advised at the informal level that the disciplinary process would proceed regarding any pending "OICs." (*Id*.) There is a notation that on January 27, 2015, Plaintiff requested that the grievance be withdrawn. (*Id*.)

It is undisputed that Plaintiff did not complete the grievance process (levels one and two) for grievance 20062990574. Plaintiff argues, however,  that he only withdrew the grievance because he was forced to by Associate Warden Lisa Walsh.

1          The exhaustion requirement may be excused under limited circumstances where the
2  prison official's actions render the grievance procedure unavailable, *McBride,* 807 F.3d at 984.
3  The Ninth Circuit has recognized the unavailability of administrative remedies under these
4  limited circumstances: (1) when a prison official mistakenly relied on a regulation and
5  obstructed the inmate's efforts to obtain the regulation, resulting in the ability of the inmate to
6  bring a timely appeal, *Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir. 2010); (2) when in inmate
7  did not have access to necessary grievance forms within the time frames for filing a grievance,
8  *Marella v. Terhune*, 568 F.3d 1024, 1027-28 (9th Cir. 2009); (3) where prison officials did not
9  reach the merits of a grievance for reasons inconsistent with or unsupported by the applicable
10 regulations, *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010); (4) where jail did not inform
11 prisoner of process for filing complaint despite repeated requests, *Albino v. Baca*, 747 F.3d 1162,
12 1172-73 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014); (5) when prison official
13 informed inmate she could not file a grievance, *Williams v. Paramo*, 775 F.3d 1182 (9th Cir.
14 2015); (6) when the inmate is threatened with retaliation for reporting an incident through the
15 grievance procedure (which requires a subjective and objective showing), *McBride*, 807 F.3d at
16 984.
17         Here, the evidence does not show that Plaintiff's administrative remedies were effectively
18 rendered unavailable. Instead, the evidence reflects that Walsh went along with the
19 recommendation of Plaintiff's mental health treatment team that Plaintiff should be allowed to
20 continue his treatment in SCU, instead of the MHU, on the condition that he drop all of the
21 *frivolous* grievances he had submitted. The evidence does not suggest that Plaintiff was
22 threatened with administrative segregation if he did not go along with this condition, as Plaintiff
23 argues. Instead, it establishes that if he dropped his *frivolous* grievances, he could proceed to
24 receive mental health treatment in a less restrictive setting. Nor does the evidence demonstrate
25 that Plaintiff was precluded from filing *non-frivolous* grievances, such as an allegation that
26 correctional officers used excessive force against him. The record reflects that Plaintiff has in
27 fact been able to file additional grievances which have been addressed on their merits. (*See* ECF
28 No. 107-1 at 2-10, grievance numbers 20063000615, 20063000570, 20062998917,

20062998914, 20062998669, 20062998668, 20062996884, 20062996447, 20062996446, 20062996368, 20062994902, 20062995899, 20062996113, 20062996070.) Therefore, the court finds his claim that he was precluded from grieving the alleged excessive force incidents of November 22 and 24, 2014, to be without merit.

The court acknowledges Defendants' reference to the other grievances Plaintiff filed that could possibly reference the events of November 22 and 24, 2014, but after reviewing the evidence, the court finds it is a stretch to say that those grievances would cover the allegations of excessive force asserted here. In any event, Plaintiff withdrew each of these grievances, and the court applies the same rationale to these grievances as it employed with respect to grievance 20062990574 insofar as Plaintiff asserts the unavailability of administrative remedies as to these additional grievances.

Plaintiff also includes a vague argument that threats of retaliation render remedies effectively unavailable. (ECF No. 149 at 7, 8.) Plaintiff appears to support his argument that he was threatened with retaliation with informal level grievance 20062989676 dated March 8, 2015. (ECF No. 149-2 at 6.) In that grievance, Plaintiff states that he "informed C/O Irvin almost 9 month[s] ago, this one I am not withdrawing, she has threatened me on 27 of Feb, she would be filing OIC until I am sent to ESP. This grievance stands as is. I am being forced to withdraw." (*Id*.)

As indicated above, "the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *McBride*, 807 F.3d at 987. To prove administrative remedies are unavailable for this reason, a prisoner must make a subjective and objective showing. *Id*. First, subjectively, the inmate "must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id*.

Plaintiff provides a grievance that is dated March 8, 2015, where he vaguely references a threat made by a prison staff member purportedly made on February 27, that she would be filing "OICs" until he was sent to ESP, to support his claim that he feared being retaliated against in

1  grieving alleged incidents that occurred in November of 2014. The court cannot conclude that
2  under these circumstances, Plaintiff has satisfied the subjective prong.
3        Moreover, objectively, Plaintiff must point the court to evidence that would allow it to
4  conclude "that a reasonable prisoner of ordinary firmness would have believed the prison
5  official's action communicated a threat not to use the prison's grievance procedure and that the
6  threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a
7  grievance." *McBride*, 807 F.3d at 987. The statement pointed to by Plaintiff makes no reference
8  to filing a grievance. While this is not a required, "there must be some basis in the record from
9  which the district court could determine that a reasonable prisoner of ordinary firmness would
10 have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize
11 the prison's grievance system." *Id*. at 988. The record is devoid of this evidence.
12       Plaintiff provides no context for the grievance, but it appears that Plaintiff was seeking to
13 reinstate a grievance complaining about the conduct of a prison staff member, and that he did not
14 want it withdrawn in connection with the agreement he made with Walsh to withdraw all
15 *frivolous* grievances to secure mental health treatment in a less restrictive setting. This does not
16 connote that Plaintiff was threatened not to use the grievance system. In fact, the Inmate
17 Grievance History report notes in response to the informal level grievance: "I/M has resubmitted
18 this grievance." (ECF No. 149-2 at 7.)
19       For the foregoing reasons, the court finds that Plaintiff has failed to exhaust his
20 administrative remedies; therefore, this action should be dismissed without prejudice.
21 **B. MERITS**
22       In light of the court's finding relative to Plaintiff's failure to exhaust his administrative
23 remedies and recommendation that the action be dismissed without prejudice, the court need not
24 consider the arguments submitted by Defendants concerning the merits of Plaintiff's excessive
25 force claims.
26       This recommendation also renders moot Plaintiff's motion for summary judgment, filed
27 on October 19, 2015. (ECF No. 163.)
28 ///

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 117) insofar as it asserts that Plaintiff failed to exhaust his administrative remedies, and **DISMISSING** this action **WITHOUT PREJUDICE**.

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an order **DENYING AS MOOT** Plaintiff's motion for summary judgment (ECF No. 163).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: January 21, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE